Roger R. Crane, Jr.
Andrew L. Morrison
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Fax: (212) 536-3901
roger.crane@klgates.com
andrew.morrison@klgates.com

*Attorneys for Plaintiff Shareholder Representative Services LLC*



**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHAREHOLDER REPRESENTATIVE SERVICES
LLC, suing on behalf of the former shareholders of
ORIEL THERAPEUTICS, INC.,

JUDGE JONES

12 - CV. - 6154

               Plaintiff,

    - against -

SANDOZ INC., SANDOZ AG, SANDOZ
INTERNATIONAL GmbH, JEFF GEORGE and
CHRISTINA ACKERMANN,

             Defendants.

**COMPLAINT**

**FILED UNDER SEAL**

------------------------------------------------------------X

Plaintiff Shareholder Representative Services LLC ("SRS") by its undersigned attorneys

hereby alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action seeking damages for breach of contract, fraud, negligent

misrepresentation and violations of federal and state securities fraud statutes brought by SRS on

behalf of the former Shareholders ("Oriel Shareholders") of Oriel Therapeutics, Inc. ("Oriel") a

bio-pharmaceutical company that defendant Sandoz Inc. ("Sandoz") purchased pursuant to an

Agreement and Plan of Merger entered as of April 18, 2010.

2.    On or about April 18, 2010 Oriel and SRS entered into a written Agreement and Plan of Merger ("Merger Agreement") with Sandoz whereby Sandoz agreed to purchase Oriel. A copy of the Merger Agreement is annexed hereto as Exhibit "A".  At the time of the merger, Oriel was developing generic alternatives to patented drugs for asthma and other chronic obstructive pulmonary diseases.  Sandoz's purchase price, in general, amounted to ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

3.    The parties' negotiations of ████████████████████████

████████████████████████ found in the Merger Agreement were predicated in part upon Sandoz's representations that it ████████████████████████

████████████████████████████████████████████████

████████████████████████

4.    However, at all times leading up to the negotiation, execution and June 2010 closing of the sale of Oriel to Sandoz, ████████████████████████

████████████████████████. It was not until September 24, 2010, months after the merger closed, that SRS and the Oriel Shareholders learned that Sandoz was ████████████████████████████████████

████████████ rather than ████████████████████████████

████████

5.     Sandoz has informed SRS that the ███████████████████. The Merger Agreement required Sandoz to ███████████████████████ Sandoz did not ████████████████████████████████████████ ██████████████████████████████████

6.     In fact during a meeting on May 4, 2012, Dr. Richard Fuller, Sandoz Inc.'s then President and Head of Dry Powder Inhalation and the person accountable for the development of █████, informed a representative of SRS and certain of the Principal Shareholders of Oriel (who sold their shares to Sandoz) that after the merger closed he ████████████████████ ████████████████████████████████████ ██████████    In addition, in a letter dated March 5, 2012, Shannon Klinger, Vice President, Legal and Intellectual Property, General Counsel N.A. of Sandoz, stated that ███████████ ████████████████████████████████████ This highlights the fact that ██████████████████████████ █████████████████████

7.     However, notwithstanding the above, upon information and belief all of the conditions that needed to be met to ████████████████ either have been met or have not been met because Sandoz deliberately elected not to meet the conditions.  Moreover, Sandoz has stated that ███████████████████████████████████████ ████████████████████████

8.     Also, Sandoz's representations to the Shareholders regarding ███████████ ████████████ and its failure to inform them that ███████████████████ ████████████████████████████████████

██████████████████ constituted fraud, negligent misrepresentation and violation of the various securities statutes in states where the misrepresentations and omissions were made.

9.      Accordingly, the Oriel Shareholders have been damaged in an amount to be determined at trial but, in no event, less than ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, as the federal claims asserted herein arise under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

11.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as such claims form part of the same case or controversy concerning the federal claims.

12.     Venue is proper in this District because ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████.

## THE PARTIES

13.     Plaintiff Shareholder Representative Services LLC is a Colorado limited liability company with offices located in San Francisco, California, and Denver, Colorado.  SRS is the ████████████████████████████████████████████ Pursuant

to that provision, SRS is duly constituted and appointed the agent and attorney-in-fact of the former Oriel Shareholders and is authorized to take any and all actions required or permitted under the Merger Agreement.

14.     Defendant Sandoz, Inc. ("Sandoz") is a Colorado corporation with a principal place of business located in Princeton, New Jersey.  Sandoz is part of the Novartis Group which is headquartered in Basel, Switzerland.

15.     Upon information and belief, Sandoz International GmbH is the parent of Sandoz AG and is headquartered at Industriestrasse 25, 83607 Holzkirchen, Germany.

16.     Defendant Sandoz AG is a multi-national pharmaceutical company located in Basel, Switzerland.  Sandoz International GmbH, Sandoz AG and Sandoz Inc. are referred to collectively as "Sandoz".  Sandoz is owned by Novartis and is the world's second largest producer of generic pharmaceutical drugs.

17.     Defendant Jeff George is the Chief Executive Officer of Sandoz AG.  Upon information and belief, Mr. George has an office located at Sandoz International GmbH in Holzkirchen, Germany.

18.     Defendant Christina Ackermann is the Global Head Legal & General Counsel of Sandoz AG.  Upon information and belief, Ms. Ackermann has an office located at Sandoz International GmbH in Holzkirchen, Germany.

## THE MERGER

19.     In or about July 2009, Oriel retained the investment advisory firm of Lazard Frères & Co., LLC ("Lazard") to advise and administer the potential sale of Oriel to a third party.

████████████

20.    On or about December 11, 2009, Sandoz sent to Oriel and Lazard Frères & Co. █

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████

21.    █████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

22.    █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

23.   ███████████████ is annexed hereto as Exhibit "B". ███████

████████████████████████████████████████████████████████████

██████████████████████████████

### The Parties' Negotiations

24.   Based upon the representations made ███████████ in addition to similar

oral representations made by and on behalf of Sandoz, the Oriel Board of Directors elected to

pursue exclusive negotiations with Sandoz regarding a merger transaction.   Oriel was

represented in the negotiations by certain of its officers as well as certain principal shareholders

of Oriel (the "Principal Shareholders").   Sandoz was represented by officers of Sandoz AG and

Sandoz Inc.

25.   ███████████████████, the parties commenced negotiating a Merger

Agreement.   The parties ultimately agreed to a structure whereby ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████   Accordingly, ██████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████   Critically, Sandoz also agreed ███████████████████

██████████████

26.   ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████

27.   Oriel had been developing ███████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████   Accordingly, ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

28.   Throughout the negotiations, Sandoz representatives continued to insist that

███████████████████████████████████████████████████████

████████   In fact, at a meeting in New York City during the week of March 22, 2010, Daniel

Salvadore, Director of Strategy and Mergers and Acquisitions for Sandoz AG reiterated to Oriel

representatives consisting of certain officers and Principal Shareholders, including among others,

Eric Aguiar and Jim Niedel, that ███████████████████████████████

███████████████████████████████████████████████████████

██████████████████   Based upon Sandoz's insistence and representations, the second draft of

the Merger Agreement █████████████████████████████████████

█████████

29.   Even though Sandoz had insisted specifically on ████████████████████

██████████████████████████   it revised the initial drafts to delete the reference to

███████████████████████████████████████████████████████

███████████████████████████████████

30.     Ultimately, both parties agreed in the execution version of the Merger Agreement

to ███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

31.     Prior to execution of the Merger Agreement, an Oriel representative attempted to

███████████████████████████ as part of the due diligence for Oriel's selling shareholders.

█████████████████████████████████████████████████████████████████████

████████████████████ Sandoz told Oriel's representative that a ████████████████████████

██████████████████████████████████ This gave credence to Sandoz's

representations that ████████████████████████████████████████████

32.     In fact, █████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

**Sandoz's Post-Closing Failure to** ███████████████████████████████████

33.     The parties executed the Merger Agreement on or about April 18, 2010.

34.     The merger closed on or about June 1, 2010.

35.     Pursuant to the Merger Agreement, ████████████████████████████████████

██████████████████████████████████████

36.     Sandoz's first report to Plaintiff in its capacity as the Oriel Stockholders'

Representative ███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

     37.     However, the September 24, 2010 report also indicated that Sandoz was investigating ████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

     38.     Accordingly, three months after the closing, September 24, 2010, Sandoz was formulating a plan for ████████████████████████████████████ ████████████. Sandoz acknowledged that the failure to ████████████████████████ ████████████████████████████████████████████████

     39.     Sandoz's next quarterly report ██████████████████████ Despite repeated requests by SRS, Sandoz did not deliver the report until January 11, 2011. The January 11 report contained a ████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████



40.     Sandoz's January 11, 2011 report advised SRS that ███████████

████████████████████████████████████████████████████████

████████████

41.     Accordingly, Sandoz arranged to ████████████████████

███████████████████████. Prior to January 11, 2011, the ████████

███████████████████ was damaged during shipment to ████████

causing further delay.

**SANDOZ FAILS TO** ████████████████████████

42.     When the Principal Shareholders agreed to ███████████████

███████████████ the parties contemplated that ███████████████

████████████████████████.

43.     However it was not until months after closing that ████████████

███████████████████ At that time, there was ██████████████

██████████

44.    As of April 2011, Sandoz reported that it ███████████████████

████████████████████████████████

45.    The Merger Agreement provided a ███████████████████

███████████████████████████████ However, Sandoz did not

even ███████████████████████████████

██ In fact, in or about December 2011, Sandoz advised the Principal Shareholders that it was

████████████████████

46.    As of June 28, 2012, Sandoz had yet to ████████████████

██████

47.    Sandoz's plan to ██████████████████████████████

████████████████████ – a plan that finds no support in the Merger Agreement – never

happened prior to ██████████████████ and still has not been completed.

**SANDOZ FAILS TO ████████████████**
**████████████████**

48.    Sandoz unilaterally decided, despite the terms of the Merger Agreement, to focus

its efforts on ██████████████████████████████████████████

████████████████

49.    Accordingly, Sandoz did not ██████████████████████

50.    Sandoz's unilateral actions delayed ██████████████████████

█████████████████████ and thereby delayed ██████████████████

█████

51.    ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

-12-

52.     By failing to do so, Sandoz has significantly delayed meeting both of these requirements and as a result ███████████████████████████████████████████████

███

**ALL OF THE CONDITIONS THAT NEEDED TO BE MET** ████████████████
████████████████ **HAVE EITHER BEEN MET OR HAVE NOT BEEN MET**
**BECAUSE SANDOZ DELIBERATELY ELECTED NOT TO MEET THEM**

53.     However, notwithstanding the above, upon information and belief all of the conditions that needed to be met ██████████████████ either have been met or have not been met because Sandoz deliberately elected not to meet the conditions.

54.     For instance, Sandoz has informed SRS and certain of the Principal Shareholders that ████████████████████████████████████████████████████

███

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

55.     Sandoz has also taken the position with SRS and the Oriel Shareholders that ████████████████████████████████████████████████████████████ However, Sandoz has failed to support this conclusion with any details.

56.     However, Sandoz's conclusion is contrary to previous statements made to SRS. As early as October 2011, Sandoz stated that ██████████████████████████ Moreover,

-13-

on January 27, 2012, Sandoz reported that, 

57.    Sandoz has also stated that

58.    On December 21, 2011 and March 26, 2012, Sandoz advised SRS and the

Principal Shareholders that

Also, on December 21, 2011 and March 26, 2012, Sandoz advised SRS that

## COUNT I

## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT
## OF 1934 AND RULE 10b-5 PROMULATED THEREUNDER
(Against all Defendants)

59.    SRS repeats and realleges the allegations contained in paragraph "1" through "58"

of the complaint as if more fully set forth herein.

60.    All shares of stock conveyed by the Oriel Shareholders to defendants pursuant to

the Merger Agreement are "securities" as defined by Section 3(a)(10) of the Exchange Act, 15

U.S.C. § 78c(a)(10).

61.    The transfer of Oriel's shares pursuant to the Merger Agreement on June 10, 2010

constituted the sale of securities within the meaning of Section 10(b) of the Exchange Act.

62.    Defendants directly and/or indirectly, by use of the means and instrumentalities of

interstate commerce or the mails, made untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, in connection with their purchase of Oriel's

securities, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     The purpose and effect of said misrepresentations and omissions were, among other things, to induce the Oriel Shareholders to sell Oriel's securities and to do so at an artificially deflated price, by misrepresenting and concealing adverse facts concerning the ███████████████████████████████████████████████████████████ ███████████████████. These misrepresentations and omissions were made "in connection with" plaintiff's purchase of Oriel's securities.

64.     The material misstatements and omissions that defendants made to the Oriel Shareholders included those set forth herein.  Each of the misrepresentations was materially false and misleading for the reasons stated herein.

65.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose the true facts, even though such facts were available to them.

66.     Defendants had the opportunity and motive to defraud plaintiff into selling Oriel's securities.

67.     At the time of the Merger Agreement, the Oriel Shareholders did not know and had no reason to believe that the misrepresentations contained untrue statements of material fact and omitted to state facts necessary to make the statements contained therein not misleading.

68.     The Oriel Shareholders justifiably and reasonably relied to their detriment on defendants' material misstatements and omissions.

69.     As a direct and proximate result of defendants' misrepresentations of material facts, plaintiff sold all of Oriel's securities to defendants, at an artificially deflated price, which

-15-

they otherwise would not have done.  Had the Oriel Shareholders known the truth, it would not have sold said securities or ███████████████████████████████████████

███████████████████████████████████████████████████████

70.     Plaintiff has suffered substantial damages as a direct result of the wrongs alleged herein in an amount to be determined at trial but, in no event, ████████████████████

█████████

## COUNT II

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
(Jeff George and Christina Ackermann)

71.     SRS repeats and realleges the allegations contained in paragraph "1" through "70" of the complaint as if more fully set forth herein.

72.     At all relevant times, defendants George and Ackermann acted as controlling persons of Sandoz within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), as alleged herein.   Mr. George was the Chief Executive Officer of Sandoz AG and Ms. Ackermann was the Global Head Legal & General Counsel of Sandoz AG.

73.     As such, Mr. George and Ms. Ackermann each had a high level position, an awareness of and participation in Sandoz's operations, and/or knowledge of Sandoz's contracts, real estate, capital expenditures and development of testing and production facilities which gave them the power to influence and control, directly or indirectly, the decision-making of the company, including the content and dissemination of the misrepresentations, or the failure to disclose facts that Plaintiff contends are material, and each of them exercised that power.

74.     As set forth above, defendant Sandoz AG violated Section 10(b) and Rule 10b-5 by its material statements and omissions as alleged in this Complaint.   By virtue of their

positions as controlling persons with respect to Sandoz AG, Mr. George and Ms. Ackermann are liable pursuant to Section 20(a) of the Exchange Act.

75.     Plaintiff has suffered substantial damages as a direct result of the wrongs alleged herein in an amount to be determined at trial but, in no event, ███████████████████ ███████

## COUNT III

### BREACH OF THE MERGER AGREEMENT
(Sandoz, Inc.)

76.     SRS repeats and realleges the allegations contained in paragraph "1" through "75" of the complaint as if more fully set forth herein.

77.     The Merger Agreement obligated Sandoz to ██████████████████████ ██████████████████. Specifically ██████████████████████ ███████████████████

78.     The Merger Agreement defines ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████

79.     The Merger Agreement defines ████████████████████████





80.    Sandoz has informed SRS that ███████████████████



81.    ████████████████████████████████████████

████████████ and Sandoz has informed SRS that ██████████████

████████████████

82.    ████████████ requires the ██████████████████

████████████████████

83.    ████████████████████████████████

████████████████████████████████████

████████

84.     Sandoz's breaches have deprived the Oriel Shareholders not only of timely payment, ███████████████████████████████████

85.     ███████████████████████████████████████████████████

███████████████████

86.     ███████████████████████████████████████████████████

███████████████████

87.     ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

88.     Sandoz has failed to use the required efforts and resources to ███████

███████████████████████████████

89.     Sandoz has notified SRS both orally and in writing, including Sandoz's March 26, 2012 quarterly report that ███████████████████████████████████

90.     Sandoz's ███████████████████████████ did not occur until several months after closing. ███████████████████████████████████████

███████████████████████████████████████████

91.     Sandoz failed to ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

92.     Sandoz's ███████████████████████████████████ has led to the ███████████████████████████████████ as described in Sandoz's reports to the Oriel Shareholders.

93.     In addition, Sandoz has failed to ████████████████████████
████████████████████████████████

94.     Sandoz has also failed to ████████████████████████████
████████████████████████

95.     The Oriel Shareholders have fully performed their obligations under the Merger Agreement.

96.     The Oriel Shareholders have fully complied with any conditions to commencing this lawsuit ████████████████████████

97.     In fact, during the May 4, 2012 meeting of the parties ████████████████
████████████████████████████████ Dr. Richard Fuller, Sandoz Inc.'s President and Head of Dry Powder Inhalation and the person accountable for the ████████████████████████████ acknowledged that ████
████████████████████████████████
████████████████████

98.     Pursuant to the Merger Agreement, Sandoz was obligated to make a ████████
████████████████████████████████
████████████████████████████████
████████████████

99.     The Merger Agreement obligates Sandoz to ████████████████
████████████████████████████████
████████████████ as those terms are defined in the Merger Agreement.

100.    Specifically ████████████████████████████
████████████████████████████████

-20-

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

101.   In Sandoz's March 26, 2012 Quarterly Report to SRS, Sandoz ████████████

████████████████████████████████████

102.   Sandoz has breached the Merger Agreement has damaged the Oriel Shareholders

in an amount to be determined at trial but, in no event, █████████████████████

## COUNT IV

## BREACH OF IMPLIED OBLIGATION OF GOOD
## FAITH AND FAIR DEALING
(Sandoz, Inc.)

103.   SRS repeats and realleges the allegations set forth in paragraphs "1" through "102" as if fully set forth herein.

104.   The terms of the Merger Agreement provide that it is █████████████████ ██████████████

105.   Sandoz, Inc. is a party to the Merger Agreement.

106.   ████████████████ Sandoz, Inc. had an implied duty of good faith and fair dealing with respect to its contractual obligations under the Merger Agreement.

107.   Sandoz, Inc. has breached its duty of good faith and fair dealing with respect to its contractual obligations under the Merger Agreement causing the Oriel Shareholders to be damaged in an amount to be determined at trial but, in no event, ████████████ ██████

## COUNT V

## COMMON LAW FRAUD
(All Defendants)

108.   SRS repeats and realleges the allegations set forth in paragraphs "1" through "107" as if fully set forth herein.

109.   Sandoz AG on its behalf of on behalf of Sandoz Inc. with its knowledge and consent represented to the Oriel Shareholders in writing and orally that ██████████ ████████████████████████████████████ ███████████████████████████████████ ████████████████████

110.    Sandoz AG on its behalf and on behalf of Sandoz Inc. with its knowledge and consent represented to the Oriel Shareholders that it ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

111.    Sandoz AG made these misrepresentations orally and in writing, including ████

███████████████████████████████████████████████████████

██████████

112.    At the time of these representations, Sandoz AG and Sandoz Inc. knew that

███████████████████████████████████████████████████████

████████████████████████████████████

113.    Sandoz AG and Sandoz Inc. failed to disclose to the Oriel Shareholders that

███████████████████████████████████████████████████████

███████████████████████████████

114.    Sandoz AG refused to allow Oriel's representatives access ████████████

███████████████████████████████████████████

115.    Sandoz AG and its agents intended to induce the Oriel Shareholders to enter into the Merger Agreement based upon their misrepresentations and omissions.

116.    The Oriel Shareholders relied upon these representations and omissions and entered into the Merger Agreement whereby they agreed to sell Oriel to Sandoz, Inc., a subsidiary of Sandoz AG and agreed to ███████████████████████████

███████████████████████████████

117. Sandoz AG and its agents' misrepresentations and omissions caused the Oriel Shareholders damages in an amount to be determined at trial but not less than ███████████ ███████

118. Sandoz AG's conduct was willful and contumacious and should be subject to the deterrent effect of punitive damages.

<u>**COUNT VI**</u>

<u>**NORTH CAROLINA SECURITIES ACT § 78A-56**</u>
(Sandoz AG, Sandoz International GmbH, Jeff George and Christina Ackermann)

119. SRS repeats and realleges the allegations contained in paragraph "1" through "118" of the complaint as if more fully set forth herein.

120. On or about December 11, 2009, Sandoz AG ███████████████ ████████████████████████ -- that contained fraudulent misrepresentations and omissions concerning, among other things, the ████████████████ ███████████████████████████████████████ ██████████████████████

121. Accordingly, ████████████████████████████ ████████████████████

122. ███████████████ contained untrue statements and/or omissions of fact which were material to Oriel's decision to sell Oriel's shares to Sandoz, Inc.

123. In addition to making the misrepresentations and omissions in ██████████ ████████████ defendants Jeff George and Christina Ackermann directly or indirectly controlled Sandoz AG with respect to ████████ and also materially aided in ███████████ ████████████

124. Sandoz AG does not own the securities sold by the Oriel Shareholders.

125.    The Oriel Shareholders have been damaged in an amount to be determined at trial.

## COUNT VII

## NORTH CAROLINA SECURITIES ACT §78A-56
(Sandoz, Inc.)

126.    SRS repeats and realleges the allegations contained in paragraph "1" through "125" of the complaint as if more fully set forth herein.

127.    The representations made by Sandoz AG were also made by it on behalf of Sandoz Inc. with its knowledge and consent.

128.    Sandoz, Inc. and its agents and representatives participated in negotiating the drafts of the Merger Agreement which were sent to Oriel in North Carolina.

129.    The drafts ultimately led to an execution version of the Merger Agreement.  The Merger Agreement was ███████████████████████████████████████████

130.    The Merger Agreement contained numerous misrepresentations and omissions regarding ████████████████████████████████████████████████████████

131.    The Oriel Shareholders are entitled to rescission and/or damages caused by the misrepresentations and omissions contained in the Merger Agreement.

## COUNT VIII

## CALIFORNIA CORPORATE SECURITES LAW § 25501
(Sandoz AG, Sandoz International GmbH, Jeff George and Christina Ackermann)

132.    SRS repeats and realleges the allegations contained in paragraph "1" through "132" of the complaint as if more fully set forth herein.

133.    On or about December 11, 2009, Sandoz AG ████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████ contained fraudulent misrepresentations and omissions concerning, among other things,



134.  Accordingly, Sandoz AG's ███████████████████████████

████████████████████████ .

135.  ████████████ contained untrue statements and/or omissions of fact which

were material to Oriel's decision to sell Oriel's shares to Sandoz, Inc.

136.  Sandoz AG knew or should have known that the statements contained ████

████████████████ were untrue or omitted information which a reasonable investor

would consider significant in deciding where or not to sell shares of Oriel.

137.  Sandoz AG does not own the securities sold by the Oriel Shareholder.

138.  The Oriel Shareholders are entitled either to rescission or to damages in an

amount to be determined at trial.

## COUNT IX

## NEGLIGENT MISREPRESENTATION
(Sandoz, Inc.)

139.  SRS repeats and realleges the allegations contained in paragraph "1" through

"138" of the complaint as if more fully set forth herein.

140.  Sandoz, Inc. agreed to use ██████████████████████████████

after the transaction closed.

141.  Accordingly, Sandoz Inc. obligated itself to a heightened duty beyond good faith

████████████████████ .

142.  Sandoz had a fiduciary duty to provide accurate and truthful information to the

Oriel Shareholders.

143.    Sandoz AG on behalf of Sandoz Inc. and with its knowledge and consent represented that ███████████████████████████████████████████████ ███████████████████████████████████████

144.    Sandoz failed to disclose that ████████████████████████████████ ██████████████████████████████████████ when the Merger Agreement was executed or at the time the transaction closed in June 2010.

145.    Sandoz's misrepresentations and omissions were material to the Oriel Shareholders' decision to sell their shares to Oriel.

146.    Sandoz failed to exercise reasonable care in communicating the ███████████ ██████████████████████████████

147.    The Oriel Shareholders justifiably relied upon the false information provided by Sandoz.

148.    Sandoz's misrepresentations caused the Oriel Shareholders to agree to ██████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████

149.    The Oriel Shareholders have been damaged in an amount to be determined at trial but in no event less than ████████████████████████

## <u>COUNT X</u>

## <u>EQUITABLE FRAUD</u>
(Sandoz, Inc.)

150.    SRS repeats and realleges the allegations contained in paragraph "1" through "149" of the complaint as if more fully set forth herein.

151.    Sandoz AG on behalf of Sandoz Inc. and with Sandoz Inc.'s knowledge and consent made false representations of fact with regard to ███████████████ with an intent to purchase Oriel from its shareholders without ████████████████████████ ████████████████████████████████████████

152.    The Oriel Shareholders justifiably relied upon Sandoz's representations and omissions and entered into the Merger Agreement.

153.    Sandoz owed the Oriel Shareholders a heightened duty based upon its agreement ████████████████████████████████████████.

154.    As a result, the Oriel Shareholders have been damaged in an amount to be determined at trial, but in no event less than ███████████████████

### COUNT XI

### UNJUST ENRICHMENT
(Sandoz, Inc.)

155.    SRS repeats and realleges the allegations contained in paragraph "1" through "154" of the complaint as if more fully set forth herein.

156.    Sandoz obtained the shares of Oriel for materially less consideration than the Oriel Shareholders were willing to accept ████████████████████████ ██████

157.    Sandoz used improper means to obtain Oriel for less than fair consideration and, ██████████████████████████████

158.    SRS lacks an adequate remedy at law.

159.    Accordingly SRS on behalf of the former Oriel Shareholders is entitled to equitable relief, including, but not limited to, a constructive trust for any income stream █████ ██████

WHEREFORE, Plaintiff SRS demands judgment on behalf of the former Oriel

Shareholders as follows:

1.  In an amount to be determined at trial but in no event less than ██████████ on Counts I, II, III, IV, V, IX and X, ████████, plus punitive damages for the intentional fraud claims in the amount of $1 billion;

2.  In an amount to be determined at trial on Counts VI, VII and VIII;

3.  Granting rescission of the Merger Agreement on Counts VII and VIII;

4.  Creating a constructive trust for any income stream earned by ██████ on Count XI;

5.  For such further relief as the Court deems proper; and

6.  Awarding Plaintiff the fees and expenses incurred in connection with this action.

Dated:   New York, New York
         August 10, 2012

                                K&L GATES LLP

By: _____
                        Roger R. Crane, Jr.
                        Andrew L. Morrison
                        599 Lexington Avenue
                        New York, New York 10022
                        Telephone:  (212) 536-3900
                        Fax:  (212) 536-3901
                        roger.crane@klgates.com
                        andrew.morrison@klgates.com

                        *Attorneys for Plaintiff Shareholder Representative Services LLC*

# FILED UNDER SEAL

# EXHIBIT A

## (MERGER AGREEMENT)

# **FILED UNDER SEAL**

# EXHIBIT B

## (OFFER LETTER)